HESS DIE MOLD, INC., Appellant,

v.

AMERICAN PLASTI–PLATE CORPORATION, Appellee.

No. 12–81–0139–CV.

Court of Appeals of Texas, Tyler.

June 2, 1983.

James W. Jenkins, Tyler, for appellant.

Richard W. Lottmann, Wilson, Miller, Spivey, Sheehy, Knowles & Hardy, Tyler, for appellee.

McKAY, Justice.

Defendant (Hess) appeals from a judgment wherein plaintiff (American) recovered damages for breach of contract. Trial was to the court. No statement of facts appears in the record, but findings of fact and conclusions of law were requested and filed.

In presenting the nature of the case and the contentions of the parties, we must rely exclusively upon the pleadings and findings of fact made by the trial court, in the absence of a statement of facts. *Mial v. Mial,* 543 S.W.2d 736, 737 (Tex.Civ.App.—El Paso 1976, no writ); *Ives v. Watson,* 521 S.W.2d 930, 932 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

American is in the business of injection molding of plastics. Hess manufactures die molds. One of American's molds had become old and worn to the point that it no longer performed satisfactorily, and it solicited bids for a new one. On April 27, 1979, Hess submitted a quote to American to design and build a suitable mold at a price of $23,445.00, one-half in advance and the balance due on delivery. This quote was accepted by American on the same day, and it thereafter sent a purchase order embodying the terms of said quote to Hess. One of these terms provided for delivery of the finished mold within eighteen weeks from April 27, 1979. Pursuant to the terms of the contract, American issued a check to Hess on May 7, 1979, in the amount of $11,722.50 as payment of one-half of the agreed price.

Hess never completed a mold which would perform or operate properly in American's business. As a result, on June 20, 1980, American was forced to contract with another manufacturer for the production of a suitable mold at a contract price of $47,500. Thus the cost to American for this mold, over and above its contract price with Hess, was $24,065.

American thereafter filed suit against Hess for breach of contract, praying for a return of the $11,722.50 down payment and the $24,065.00 excess incurred to procure a similar mold from another manufacturer, among other things. After a nonjury trial, the court rendered judgment awarding the above amounts to American, and Hess appeals.

Appellant's points of error all attack the award of $24,065.00, stated by the trial court to represent the benefit of the bargain for American. Its first three points attack said award on the ground that such losses are "special damages," as opposed to "general damages." Thus points one

through three allege that the pleadings of American and the findings of the trial court do not support such an award because there is no allegation or finding that said losses were contemplated by Hess at the time the contract was made.

■ General damages are those which naturally and necessarily flow from a wrongful act, are so usual an accompaniment of the kind of breach alleged that the mere allegation of the breach gives sufficient notice, and are conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract. Special damages arise naturally but *not necessarily* from the breach, are so unusual as to normally vary with the circumstances of each individual case, and must be shown to have been contemplated or foreseen by the parties. *Sherrod v. Bailey,* 580 S.W.2d 24, 28 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Anderson Dev. Corp. v. Coastal States, etc.,* 543 S.W.2d 402, 405 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Sterling Projects, Inc. v. Fields,* 530 S.W.2d 602, 605 (Tex.Civ.App.—Waco 1975, no writ).

■ In our opinion, the damage award of $24,065.00 is properly characterized at an item of general damages. Hess contracted to replace an existing mold which American was actively using in its manufacturing process. It should have been clearly foreseeable to Hess that if it failed to supply a suitable new mold to American within the time specified, American would be forced to obtain said mold from another manufacturer in order to meet its commitments to its customers. The time limit specified in the contract was only eighteen weeks, while a period of fourteen months eventually passed before American abandoned its efforts with Hess and contracted with another supplier.

We note that the procurement of substitute goods is a remedy specifically provided a buyer after the seller breaches a contract to deliver goods, under § 2.712, Tex.Bus. & Com.Code Ann. (Vernon 1968). That section provides:

Section 2.712. "Cover"; Buyer's Procurement of Substitute Goods

(a) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(b) The buyer may recover from the seller *as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined* (Section 2.715), but less expenses saved in consequence of the seller's breach. (Emphasis added.)

Section 2.715 provides:

Section 2.715. Buyer's Incidental and Consequential Damages

(a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(b) Consequential damages resulting from the seller's breach include

(1) *any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know* and which could not reasonably be prevented by cover or otherwise; and

(2) injury to person or property proximately resulting from any breach of warranty. (Emphasis added.)

It is thus apparent that the common law concept of "special damages" has been embodied in the Code definition of "consequential damages," while the difference between the cost of cover and the original contract price is, in our opinion, properly characterized as general damages.

Since we hold that the cost of "cover" was an item of general damages in this instance, it follows that allegations and/or findings of contemplation of said loss were

not necessary to support the judgment in this case. We therefore overrule appellant's points one through three.

 In point four, appellant asserts the trial court erred in failing to grant its motion for new trial, in which appellant alleged the damage award was excessive. The trial court failed to act on said motion, thus allowing it to be overruled by operation of law. Tex.R.Civ.P. 329b(c). There is nothing in the record to indicate that said motion was ever called to the attention of the trial judge.

No authority is cited in support of this point. Failure to cite authority in support of a point of error waives said point. *Leckey v. Warren,* 635 S.W.2d 752, 753, 754 (Tex.Civ.App.—Corpus Christi 1982, no writ), and cases there cited.

Furthermore, appellant's only argument under this point is that the damages awarded are not supported by the record. As we noted at the outset of this opinion, the record in this court contains no statement of facts. The pleadings and findings of fact set out the original contract price with Hess and the "cover" contract price. Without a statement of facts we must presume on appeal that sufficient evidence was introduced to support the findings and judgment of the trial court. *Yoast v. Yoast,* 620 S.W.2d 223, 229 (Tex.Civ.App.—Tyler 1981) *aff'd in part and rev'd in part on other grounds,* 649 S.W.2d 289 (1983). Every presumption will be indulged in favor of the trial court's findings and judgment, and appellant is powerless to make a viable complaint as to the sufficiency of the evidence to support a judgment in the absence of a statement of facts. *Yoast, supra* at 229–230; *Mial v. Mial, supra* at 737–8; *Ives v. Watson, supra* at 932. Moreover, since the appellant requested the trial court to file such findings, and did not request any additional findings, the findings of the trial court are binding on the parties and this court. *Yoast, supra; Mial, supra; Ives, supra.* Appellant's fourth point is overruled.

The judgment of the trial court is affirmed.