Opinion issued April 16, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00081-CV

————————————

**AES VALVES, LLC AND IES INTERNATIONAL ENERGY SERVICES, LTD., Appellants**

**V.**

**KOBI INTERNATIONAL, INC. D/B/A KOBI GROUP, Appellee**

On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2016-61999

---

### MEMORANDUM OPINION ON REHEARING

Appellants, AES Valves, LLC and IES International Energy Services, Ltd. moved for rehearing of our October 31, 2019 opinion and judgment. We deny the motion for rehearing, but withdraw our opinion and judgment of October 31, 2019 and issue the following opinion and a new judgment in their stead.

In this restricted appeal, appellants, AES Valves, LLC ("AES") and IES International Energy Services, Ltd. ("IES"), argue that the trial court improperly granted a no-answer default judgment in favor of appellee, Kobi International, Inc. d/b/a Kobi Group ("Kobi"). In three issues, appellants argue that (1) the trial court improperly granted a default judgment and (2) legally and factually insufficient evidence supports the award of damages, attorney's fees, and prejudgment interest.

We affirm in part and reverse and remand in part.

## Background

In 2012, Kobi and AES entered into a $1.25 million purchase order for custom plug valves for a pipeline project in Peru. Although AES delivered the plug valves, Kobi alleged that the plug valves were defective and inoperable for the project. Despite AES and IES's[1] assurances that they would repair the plug valves, Kobi alleged that the plug valves were never adequately repaired. Kobi sued appellants for breach of contract, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraud, and violations of the Deceptive Trade Practices Act ("DTPA"). As relevant here, Kobi sought economic damages, treble damages under the DTPA,[2]

---

[1]    IES is the parent company of AES.

[2]    *See* TEX. BUS. & COM. CODE § 17.50(b)(1) (providing that trier of fact may award no more than three times amount of economic damages if it finds conduct of defendant was committed knowingly).

2

exemplary damages for fraud, and attorney's fees under section 38.001(8) of the Texas Civil Practice and Remedies Code and section 17.50(d) of the DTPA. Kobi also alleged that AES and IES were jointly and severally liable pursuant to alter ego theories.

Kobi attempted to serve Robert Schmidt, the president and registered agent of both AES and IES, multiple times with a private process server and a constable. When those attempts at service were unsuccessful, Kobi filed a motion for substituted service.[3] Kobi asserted that it used reasonable diligence to find the registered agent at appellants' registered office, and Kobi attached the process server's affidavit, stating that she could not locate Robert Schmidt. Kobi requested that the trial court allow Kobi to serve the secretary of state, as appellants' agent for service of process.[4]

---

[3] A party seeking substituted service of process is required by the rules of civil procedure to file a motion supported "by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either [TEX. R. CIV. P. 106](a)(1) or (a)(2) at the location named in such affidavit but has not been successful[.]" TEX. R. CIV. P. 106(b).

[4] *See* TEX. BUS. ORGS. CODE §§ 5.251 (providing that secretary of state is agent for entity when registered agent of entity cannot with reasonable diligence be found), 5.252 (providing service on secretary of state is effected by delivering to secretary duplicate copies of process, notice, or demand).

On December 27, 2016, the trial court granted Kobi's motion for substituted service, allowing service of process on appellants in one of five ways, including serving the Texas Secretary of State, as agent for appellants.

After appellants failed to answer, Kobi sought a default judgment on liability, asserting that it completed substituted service by affixing "a true copy of the citation and a copy of Plaintiff's First Amended Petition to the front door of the usual place of abode of Defendants AES Valves, LLC's and IES International Energy Services, Ltd.'s registered agent, Robert Schmidt, 13714 Vinery, Cypress, TX 77429." Kobi stated that it received returns of service for both AES and IES on February 16, 2017. Kobi asserted that because AES and IES had not answered, it was entitled to a default judgment on liability and a hearing to establish the amount of damages.

On April 25, 2017, the trial court granted the default judgment on liability. Kobi then moved for a default judgment on damages, asserting that it was entitled to recover damages as stated in its first amended petition. Kobi sought economic damages of $8,347,015.78 via its DTPA, fraud, and other causes of actions, and it sought treble damages of $16,694,031.56 pursuant to the DTPA. Alternatively, Kobi sought exemplary damages of $33,388,063.12 under its fraud cause of action

4

and section 41.003 of the Texas Civil Practice and Remedies Code.[5]  Kobi also sought attorney's fees under section 38.001(8) of the Texas Civil Practice and Remedies Code and under section 17.50 of the DTPA.

After a hearing on its motion for default judgment on damages on July 13, 2017,[6] Kobi filed a supplement to its motion, asserting that the trial court requested that Kobi submit a revised proposed order that awarded treble damages but not punitive damages and awarded attorney's fees incurred on a contingency basis. The trial court signed a July 26, 2017 final judgment, which awarded Kobi a lump sum of $25,041,047.34 in damages, $400,640.00 in attorney's fees, and prejudgment interest.  The trial court's final judgment further provided that AES and IES are jointly and severally liable to Kobi for all amounts in the judgment.

On January 25, 2018, appellants filed a notice of restricted appeal.

## Service of Process

In their first issue, appellants argue that the default judgment cannot stand because they were not properly served.

---

[5]   *See* TEX. CIV. PRAC. & REM. CODE § 41.003 (providing that exemplary damages may be awarded if claimant proves by clear and convincing evidence that harm results from fraud, malice, or gross negligence).

[6]   The hearing was not transcribed.

5

## A. Standard of Review

To succeed on a restricted appeal, a party is required, among other things,[7] to show that error is apparent on the face of the record. TEX. R. APP. P. 30; *Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 791 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). The face of the record consists of all the papers on file in the appeal, including any reporter's record. *Osteen v. Osteen*, 38 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A review of a restricted appeal includes review of the legal and factual sufficiency of the evidence, including the evidence of damages. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269 270 (Tex. 1997); *Regions Bank v. Centerpoint Apartments*, 290 S.W.3d 510, 512 (Tex. App.—Amarillo 2009, no pet.).

A restricted appeal is a direct attack. *Barker CATV*, 989 S.W.2d at 792; *see Primate*, 884 S.W.2d at 152. The record must affirmatively show strict compliance with the rules for service of citation in order for a default judgment to withstand direct attack. *Barker CATV*, 989 S.W.2d at 792; *Primate*, 884 S.W.2d at 152. If strict compliance is not affirmatively shown, the service of process is invalid and has no effect. *Barker CATV*, 989 S.W.2d at 792. There are no

---

[7] Because the parties only contest whether error is apparent on the face of the record, we limit our analysis to that issue.

presumptions in favor of valid issuance, service, or return of citation in the face of a restricted appeal attacking a default judgment. *See Primate*, 884 S.W.2d at 152.

When, as here, the defendants' registered agent cannot be found at its registered office with reasonable diligence, the plaintiff is permitted to seek substituted service on the secretary of state. *See* TEX. BUS. ORGS. CODE § 5.251(1)(B). Service of process on the secretary of state is accomplished by delivering duplicate copies of the process and any required fee. *See id*. § 5.252. Thereafter, the secretary of state shall forward the process to the entity's most recent address on file with the secretary of state by certified mail, return receipt requested. *See id*. § 5.253. The secretary may issue a certificate of service known as a Whitney Certificate. *See Wright Bros. Energy, Inc. v. Krough*, 67 S.W.3d 271, n.1 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (stating that "Whitney certificate" is issued by secretary of state when it has received two copies of petition and citation and has forwarded one copy of each to defendant) (citing *Whitney v. L & L Realty Corp*., 500 S.W.2d 94, 95–96 (Tex. 1973)). "Absent fraud or mistake, the Secretary of State's certificate is conclusive evidence that the Secretary of State, as agent of [the defendant], received service of process for [the defendant] and forwarded the service as required by the statute." *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986).

7

**B.    Analysis**

Appellants argue that the return of service was improper and that the default judgment must be set aside. Specifically, appellants argue that the original return of citation, amended return of citation, and second amended return of citation state that the process server received the documents before the order for alternative service was even signed. Appellants argue that although the returns of service show that the process server stated that he received the documents around December 14 or December 15, the trial court's order granting substituted service was not signed until December 27.

Kobi responds that appellants were served with process twice, by posting and through the secretary of state, both of which were authorized by court order after appellants' registered agent, Robert Schmidt, could not be found.

The record reflects that the trial court granted Kobi's motion for substituted service of its first amended petition. The trial court's order allowed process to be served on appellants, among other ways, by serving the secretary of state, as agent for service of process of appellants with a true copy of the citation and a copy of plaintiff's first amended petition.

The face of the record shows that the secretary of state issued Whitney Certificates for appellants on March 29, 2017. The certificates state that it received

8

a copy of the citation and plaintiff's first amended petition[8] on January 17, 2017 and that a copy was forwarded on January 23, 2017, by certified mail, return receipt requested, to AES and IES via Registered Agent Robert Schmidt, 13714 Vinery, Cypress, TX 77429, the address on file with the secretary of state.[9]

Appellants do not allege fraud or mistake in the issuance of the Whitney certificates. Instead, appellants argue that service is defective because the citations and the returns of citations contain an incorrect address. Appellants claim that the citations for AES and IES list an address at 13714 Vinery Cypress, Texas 77429, while other affidavits of service include an address at P.O. Box 13375, Austin, TX 78711. Appellants argue that the proper address for service on the Texas Secretary of State is P.O. Box 12079, Austin, Texas 78711-2079. Because the citations and the affidavits of certified mailing contain an incorrect address served, appellants assert that the default judgment cannot stand.

Appellants appear to argue that the address of the Texas Secretary of State is incorrect, and it asks us to take judicial notice of the correct service address for the

---

[8] Section 5.252 states that service on the secretary of state is effected by "delivering to the secretary duplicate copies of the process, notice, or demand[.]" TEX. BUS. ORGS. CODE § 5.252.

[9] Section 5.253 provides that, after service in compliance with section 5.252, the secretary of state shall immediately send one of the copies of the process, notice, or demand to the named entity with the notice "addressed to the most recent address of the entity on file with the secretary of state[.]" TEX. BUS. ORGS. CODE § 5.253.

Texas Secretary of State. However, appellants have cited no authority that service is defective when an allegedly incorrect address is used for the secretary of state. *See* TEX. R. APP. P. 38.1(i). Moreover, in a restricted appeal, we are concerned with errors apparent on the face of the record. Whether the Texas Secretary of State's address is correct or not, the correct address is not apparent from the face of the record. *See Wright Bros. Energy*, 67 S.W.3d at 274 (stating that entity's correct address is nowhere apparent in trial court's record). More importantly, the Whitney certificates are conclusive that the secretary of state received service of process as agent for appellants, and appellants do not assert fraud or mistake in the issuance of the Whitney Certificates. *See Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (stating that certificate from secretary of state conclusively establishes that process was served). Thus, we conclude that the secretary's certificates conclusively established service of process, and the trial court had personal jurisdiction over appellants.

We overrule appellants' first issue.[10]

## DTPA

---

[10]    Appellants assert a number of additional arguments as to why service of process was not effective. Because we have concluded that the Whitney Certificates are conclusive, it is unnecessary to address appellants' remaining complaints about service of process. *See* TEX. R. APP. P. 47.1.

In their second issue, appellants argue that the trial court erred in granting default judgment on Kobi's DTPA claim. Specifically, appellants argue that Kobi's DTPA claim is legally and factually insufficient to support a default judgment.

Appellants argue that Kobi alleged in its first amended petition that it entered into a contract for $1,250,000 with appellants. Because the DTPA does not allow a cause of action for a suit involving more than $500,000, appellants argue that, on the face of Kobi's petition, its DTPA claim is invalid. In its appellee's brief, Kobi does not respond to appellants' argument that the DTPA claim is invalid. In their reply brief, appellants note that Kobi did not address the invalidity of its DTPA claim and that Kobi abandoned all causes of action other than the DTPA claim.[11]

A petition is inadequate to support a default judgment when: (1) the petition does not attempt to state a cause of action within the court's jurisdiction; (2) the

---

[11] Although we agree that Kobi did not address the invalidity of its DTPA claim on appeal, appellants do not provide any authority or point to anywhere in the record showing that Kobi abandoned its breach of contract, fraud, and breach of warranty causes of action. In a supplement to Kobi's motion for default judgment, Kobi stated that, after a hearing on July 13, 2017, the trial court requested that Kobi submit a revised proposed order that awarded treble damages, but not punitive damages, and awarded attorney's fees incurred on a contingency basis, but not on an hourly basis. Nothing in the record indicates that Kobi abandoned its other causes of action in its first amended petition. We therefore conclude that Kobi asserted and continued to assert all of the causes of action referenced in its first amended petition.

petition does not give the defendant fair notice of the claim asserted; or (3) the petition affirmatively shows the invalidity of the claim. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988).

The DTPA contains an exemption if the cause of action arises from a transaction or set of transactions relating to the same project if the total consideration by the consumer amounts to more than $500,000. TEX. BUS. & COM. CODE § 17.49(g). The purpose of this exemption is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA. *See Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 473–74 (Tex. App.—Fort Worth 2004, no pet.).

In its first amended petition, Kobi alleged that it had entered into a contract for $1,250,000 with appellants for custom plug valves. By its own pleading, Kobi was statutorily precluded from seeking DTPA damages because Kobi's transaction with appellants exceeded the $500,00 limit imposed by the DTPA. *See* TEX. BUS. & COM. CODE § 17.49(g) (imposing $500,000 limit on DTPA); *East Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 821 (Tex. App.—Fort Worth 2007, pet. denied) (holding that trial court did not err in granting summary judgment when transaction exceeded $500,000 limit of DTPA). We therefore conclude that Kobi

could not assert a valid DTPA cause of action and such error is apparent on the face of the record.[12]

We sustain appellants' second issue.[13]

## Unliquidated Damages

In their third issue, appellants argue that the unliquidated damages were not supported by legally and factually sufficient evidence.[14]  Appellants also argue that Kobi sought unliquidated damages pursuant to its prayer in its first amended

---

[12]    Appellants raise additional arguments as to why Kobi's DTPA claim fails. Because we have concluded that Kobi is precluded from bringing a DTPA claim, it is unnecessary for us to address appellants' additional arguments.  *See* TEX. R. APP. P. 47.1.

[13]    Although we have held that Kobi's DTPA claim is invalid and thus cannot support the trial court's granting of a default judgment, Kobi also asserted breach of contract, fraud, and breach of warranty causes of action that are unchallenged on appeal.  Because these additional causes of action are unchallenged on appeal, the default judgment on liability is proper.  *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.— Houston [1st Dist.] 2002, no pet.) (stating that if independent ground fully supports judgment, but appellant assigns no error to that independent ground, then court of appeals must accept validity of unchallenged independent ground).

[14]    Also within its third issue, appellants argue that Kobi did not present legally or factually sufficient evidence that a misrepresentation caused the problems with the plug valves.  Specifically, appellants argue that Kobi had to show that a DTPA violation constituted a producing cause of its alleged economic damages.  Because we have already concluded that Kobi's DTPA cause of action is invalid, it is unnecessary for us to address appellants' argument.  *See* TEX. R. APP. P. 47.1.

13

petition, but the "prayer does not seek purported delay penalties nor CMGC[15]-threatened charges or offsets," "[t]he alleged delay penalties CMG[C] threatened charges or offsets are neither pleaded nor may they be recovered," and "Kobi is not entitled to relief or damages beyond its pleadings."

## A. Standard of Review and Applicable Law

In conducting a legal-sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal sufficiency challenge if the record shows (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id*. at 810. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id*. at 822. In reviewing a factual-sufficiency challenge, we examine all the evidence. *Castanon v. Monsevais*, 703 S.W.2d 295, 297 (Tex. App.—San Antonio 1985, no writ). We will reverse only if the finding is against the great weight and preponderance of the evidence. *Id*.

---

[15]     CGMC is the abbreviated name for GyM-Conciviles, the consortium that ran the Peruvian project.

When a no-answer default judgment is rendered, the defendant's liability for all causes of action pled is conclusively established and all allegations of fact in the petition, except the amount of unliquidated damages, are deemed admitted. *Morgan v. Compugraphic Corp*., 675 S.W.2d 729, 731 (Tex. 1984). The plaintiff must prove by competent evidence the amount of his unliquidated damages and must prove that the injury for which damages are sought was proximately caused by the event for which liability has been established. *Id*. at 732. "The damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts." *A.B.F. Freight Sys., Inc. v. Austrian Imp. Serv., Inc*., 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied). During a default-judgment proceeding, affidavit testimony will support the award of unliquidated damages if the affidavit avers personal knowledge of the facts, describes the circumstances that resulted in the loss, and identifies the total amount owed as a result. *See Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (per curiam).

Special damages must be pled. TEX. R. CIV. P. 56. Whether particular damages must be specifically pled depends on whether they constitute general damages (also known as "direct damages") or special damages (also known as "consequential damages"). *See id*. ("When items of special damage are claimed,

15

they shall be specifically stated."); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (sub. op.) (using the terms "direct damages" and "consequential damages"); *Anderson Dev. Corp. v. Coastal States Crude Gathering Co.*, 543 S.W.2d 402, 405 (Tex. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (using terms "general damages" and "special damages"). The distinction turns on whether the damages "usually" or "necessarily" flow from the wrongful act. *See Arthur Andersen & Co.*, 945 S.W.2d at 816 (explaining that "[d]irect damages are the necessary and usual result of the defendant's wrongful act," whereas consequential damages "result naturally, but not necessarily, from the defendant's wrongful acts"); *Anderson Dev. Corp.*, 543 S.W.2d at 405 (stating that "[g]eneral damages are those which naturally and necessarily flow from a wrongful act," whereas "[s]pecial damages arise naturally but not necessarily from the wrongful act"). General damages need not be pleaded because they "are so usual an accompaniment of the kind of breach alleged that the mere allegation of the breach gives sufficient notice" that such damages were sustained. *Hess Die Mold, Inc. v. Am. Plasti–Plate Corp.*, 653 S.W.2d 927, 929 (Tex. App.—Tyler 1983, no writ). Special damages, on the other hand, "are so unusual as to normally vary with the circumstances of each individual case, and must be shown to have been contemplated or foreseen by the parties." *Id*. A default judgment, like all

16

judgments, must conform to the pleadings. TEX. R. CIV. P. 301; *Mullen v. Roberts*, 423 S.W.2d 576, 578 (Tex. 1968).

## B. Analysis

In its motion for default judgment on damages, Kobi asked to be awarded unliquidated damages as previously requested in its prayer of its first amended petition. Kobi's prayer of its first amended petition asked that it be awarded judgment against defendants, jointly and severally, for the following:

(a) The $1.25 million that Kobi paid under the purchase order;

(b) Damages and loss caused by the Defendants' contractual and tortious breaches, including costs incurred by KOBI to purchase replacement plug valves for the pipeline in Peru, to air freight the plug valves to Peru because they were delivered late to KOBI by AES, on plane tickets and hotel rooms for AES repair people to travel to Peru to attempt to fix the defects in the field, to warehouse the defective plug valves in Peru, and to otherwise investigate the cause and potential solutions to the defective plug valves;

. . .

(e) Exemplary damages.

Kobi's motion for default judgment on damages also requested additional economic damages, consisting of $1,106,048 in lost income, "when CMGC refused to pay Kobi Group this amount for the plug valves," and $3,450,247.81 for "Contugas's[16] intent 'to purchase and install at its own expense the valves and

_____

[16] Contugas is a company that distributes and markets natural gas in the Ica region of Peru, and CGMC's client on the pipeline project.

17

deduct that expense . . . from the outstanding balance due to CGMC,' which expense CGMC will pass on to Kobi Group."

In its first amended petition, the live pleading, Kobi did not request damages for (1) Kobi's lost income of $1,106,048.00 and (2) "Contugas's intent 'to purchase and install at its own expense the valves and deduct that expense. . . from the outstanding balance due to CGMC,' which expense CGMC will pass on to Kobi Group" of $3,450,247.81. These damages were consequential damages because they result naturally, but not necessarily, from the acts complained of. *See Arthur Andersen & Co.*, 945 S.W.2d at 816; *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied) (stating that profits lost on other contracts or relationships resulting from breach are consequential damages); *Boat Superstore, Inc. v. Haner*, 877 S.W.2d 376, (Tex. App.—Houston [1st Dist.] 1994, no pet.); *Harper v. Wellbeing Genomics Pty. Ltd*., No. 03-17-00035-CV, 2018 WL 6318876, at *11 (Tex. App.—Austin Dec. 4, 2018, pet. filed) (stating that profits lost on other contracts or relationships resulting from breach are indirect or consequential damages). As these are consequential or special damages, they must be specifically pled. TEX. R. CIV. P. 56 (special damages shall be specifically stated), 301 (judgment must conform to pleadings); *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 164 (Tex. 1992) (Phillips, J., concurring) (stating that "consequential damages must be specifically pled"). By failing to specifically

plead for these consequential damages, the trial court committed error by awarding at least some damages that did not conform to the pleadings. Therefore, the evidence was legally insufficient to support $4,556,295.81 out of the $25,041,047.34 in unliquidated damages awarded by the trial court, and error is apparent on the face of the record.

We sustain appellants' third issue.[17]

Because of our conclusion in appellants' third issue, this court must reverse all of the damages awarded and remand the claims for a new trial on unliquidated damages. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992) (holding that when appellate court sustains no evidence point after an uncontested hearing on unliquidated damages following no-answer default judgment, appropriate disposition is to remand for trial on issue of unliquidated damages); *see also Argyle Mech., Inc. v. Unigus Steel, Inc*., 156 S.W.3d 685, 688 (Tex. App.— Dallas 2005, no pet.) (if no-evidence point sustained as to unliquidated damages

---

[17] In a subpoint to its third issue, appellants argue that the trial court erred in finding that AES and IES are alter egos because Kobi's petition on its face did not state a claim of alter ego. Despite appellant's assertion, the trial court did not specifically find that AES and IES were alter egos. Because appellants assert that the trial court erroneously found that AES and IES were alter egos and the final judgment does not contain an alter ego finding, nothing is presented for review. *See Carlson v. Carlson*, 983 S.W.2d 304, 309 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that nothing presented for review when complained-of finding not made); *Contreras v. Henkle*, No. 04-95-00136-CV, 1996 WL 743815, at *1 (Tex. App.— San Antonio Dec. 31, 1996, no pet.) (not designated for publication) (holding that because record did not reflect that trial court made finding about which appellant complained, nothing was presented for review).

resulting from no-answer default judgment, appropriate disposition is remand for new trial on issue of unliquidated damages).  We therefore reverse the trial court's award of damages, prejudgment interest, and attorney's fees.  *See Holt Atherton Indus.*, 835 S.W.2d at 86; *see, e.g.*, *Barker v. Eckman*, 213 S.W.3d 306, 315 (Tex. 2006) (remanding for new trial on attorney's fees when damages were reduced significantly).

## Conclusion

We affirm the trial court's default judgment as to liability.  We reverse the remainder of the portion of the default judgment awarding unliquidated damages and remand for a new trial on the issue of unliquidated damages only.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Goodman and Countiss.