

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00225-CV

---

**TEXAS PRIVATE SCHOOL FOUNDATION, INC. A/K/A TEXAS PRIVATE SCHOOLS FOUNDATION, INC. D/B/A ALLEN ACADEMY, APPELLANT/CROSS-APPELLEE**

**V.**

**JERRY A. BULLIN, INDIVIDUALLY, CJB PARTNERS, LTD., AND ITS GENERAL PARTNER, CJB PARTNERS MANAGEMENT, LLC, AND BRE GROUP, LTD., APPELLEES/CROSS-APPELLANTS**

---

On Appeal from the 361st District Court
Brazos County, Texas[1]
Trial Court No. 14-001051-CV-361, Honorable Steven Lee Smith, Presiding

---

December 22, 2021

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant/cross-appellee Texas Private School Foundation, Inc., a/k/a Texas Private Schools Foundation, Inc., d/b/a Allen Academy ("Allen") and appellees/cross-appellants Jerry A. Bullin, CJB Partners, Ltd., CJB Partners Management, LLC, and BRE

---

[1] Pursuant to the Supreme Court's docket equalization efforts, this case was transferred to this Court from the Tenth Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

Group, Ltd., (collectively, "Bullin parties") both appeal from the judgment in a suit over the validity of four notes payable to the Bullin parties. We affirm in part, reverse in part, and remand the cause to the trial court.

**Background**

Allen is a private college preparatory school in Bryan, Texas. For many of its 100-plus years in existence, Allen has faced financial difficulties, as its funds collected from tuition and donations were insufficient to meet its expenses. The school was experiencing a familiar financial crunch in 2005 when a local businessman, Jerry Bullin, contacted the head of school to discuss how he could help. Bullin's children had attended Allen years before, and a grandchild was enrolled there. The chair of Allen's board of trustees, John Clanton, contacted Bullin and told him about the board's plan to embark upon a comprehensive capital campaign. The campaign was intended to retire the school's debt, construct new buildings, and create an endowment, among other things.

Bullin agreed to pledge $3 million to the capital campaign, to which Clanton also pledged $3 million and another local businessman pledged $6 million. Bullin attached certain conditions to his donation, including requirements that (1) he or a family member would have a place on Allen's board of trustees, (2) Allen would pay off its debt, (3) Allen would not borrow more money, and (4) Allen would build a new K-12 building. Bullin joined the board of trustees in September of 2006. The board approved a construction contract for the K-12 building, which was completed in 2008, and passed a resolution that it would not incur additional debt on behalf of the school. However, not all capital campaign commitments were received and Allen continued to struggle financially. After

2

his $3 million pledge was fulfilled, Bullin and his companies made additional contributions to the school in the form of gifts and loans.

In April of 2008, Bullin loaned Allen $25,000 so that the school could cover its payroll. The loan was documented using Allen's standard loan agreement form, signed by Allen's business manager, approved by the board, and later repaid by Allen. Bullin understood the board's action as an indication that it approved of borrowing money as needed.

In November of 2009, Bullin became chair of the board. Under his leadership, in the spring of 2010, Allen began another phase of construction projects. These included a remodeled gymnasium, updated football field, new track, new signage and fencing, and work on the pavilion. Bullin believed the enhanced facilities would attract more students and thus generate more tuition revenue. He agreed to pay for the athletic facilities if Allen could not raise the money from other sources. Bullin contributed more than $2.5 million to the athletic facility projects, most of which were completed by early 2011. He contributed additional funds to pay for other obligations of the school during that time.

In the 2010-2012 timeframe, one of Bullin's companies, CJB Partners, wrote sixteen checks to Allen for a total of $3,695,520. Bullin grouped the checks into four batches and signed a one-page document entitled "Loan Agreement" for each batch, as follows:

| Loan Agreement 1 | Dated 06/15/2010 | Checks Covered:<br>02/03/2010 for $200,000<br>05/10/2010 for $65,000<br>06/15/2010 for $1,500,000 | Total: $1,765,000 |
|---|---|---|---|
| Loan Agreement 2 | Dated 08/24/2011 | Checks Covered:<br>01/17/2011 for $100,000<br>01/18/2011 for $200,000 | Total: $860,000 |

3

| | | 03/17/2011 for $100,000<br>04/18/2011 for $110,000<br>05/19/2011 for $100,000<br>07/05/2011 for $250,000 | |
|---|---|---|---|
| Loan Agreement 3 | Dated 12/31/2011 | Checks Covered:<br>09/23/2011 for $100,000<br>10/25/2011 for $100,000<br>11/10/2011 for $100,000<br>12/01/2011 for $250,000<br>12/30/2011 for $220,520 | Total: $770,520 |
| Loan Agreement 4 | Dated 05/31/2012 | Checks Covered:<br>03/20/2012 for $100,000<br>05/11/2012 for $200,000 | Total: $300,000 |

Each agreement provided for an annual interest rate of five percent and for payment within thirty days of the lender's request for repayment. Each agreement was signed by Bullin on behalf of CJB Partners and by Allen's head of school, John Rouse, and two board members, John Clanton and Donald Prescott, on behalf of Allen. Although Allen's bylaws provided that only the full board or the executive committee had the power to bind the school to a loan agreement, the notes were not presented to the full board for approval.

In January of 2013, Bullin and other board members had a disagreement about the continued employment of an Allen employee. Because he did not want to continue as chair of the board unless he had the support of a substantial majority of the board, Bullin resigned from the position. In March of 2013, Bullin wrote a letter to Prescott, the new chair of the board. Bullin's letter asserted that Bullin had made $3,577,280 in loans to Allen and $6,792,000 in other contributions. At trial, Bullin testified that he wrote the letter to ensure that everyone at Allen understood the circumstances and knew what his intentions were.

4

In July of 2013, CJB Partners assigned the four notes to another Bullin entity, BRE Group, Ltd. A few months later, BRE requested that Allen sign a new loan agreement, promissory note, and deed of trust related to the debt. Allen declined to do so, explaining to Bullin and BRE that it was Allen's understanding that Bullin would not seek repayment of the notes. In January of 2014, BRE's general counsel wrote to Prescott, Allen's chair of the board, demanding full payment of the notes plus accrued interest within thirty days.

In April of 2014, Allen sued Bullin, CJB Partners, Ltd., and CJB Partners Management, LLC, seeking a declaratory judgment that the notes are void and unenforceable and requesting damages based on breach of fiduciary duty and fraud. Later, Allen also sought damages for an unfinished gymnasium project. The Bullin entities filed counterclaims for recovery on the notes.

At trial, Bullin testified that the sixteen checks were all loans which he intended Allen to repay. Allen, on the other hand, presented evidence that the checks were donations, which Bullin wanted to document as notes so that he would have flexibility in choosing when to take charitable deductions. Clanton and Prescott testified that they signed the agreements because Bullin represented that he simply wanted to order his bookkeeping and that he would forgive the notes in the future, as he had done with other loans.

The jury found for the Bullin entities on their claim for breach of the loan agreements, finding actual damages of $4,184,058. It found in favor of Allen on its $300,000 claim related to the gymnasium project. The trial court rendered judgment on the jury's verdict, awarding BRE $4,184,058 plus $25,557 in accrued interest, and awarding Allen $300,000. In addition, the trial court awarded the Bullin parties $1,487,097

in attorney's fees and awarded Allen $961,657 in attorney's fees. The trial court granted a take-nothing judgment on Allen's declaratory judgment claims. Both sides have appealed the judgment.

**The Bullin Parties' Appeal**

In their first three issues, the Bullin parties challenge the judgment on Allen's claims for promissory estoppel and breach of fiduciary duty, arguing that (1) the trial court abused its discretion in submitting questions on those claims, (2) the judgment does not conform to the pleadings, and (3) the evidence was legally insufficient to support the jury's findings. We address these arguments as to each claim in turn.

Promissory Estoppel

The Bullin parties argue that the trial court abused its discretion by submitting Questions 11 and 12 to the jury because those questions are not supported by the pleadings and were not tried by consent. We review the trial court's submission of the charge to the jury for an abuse of discretion. *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021). "A clear abuse of discretion exists when the trial court submits a jury question that is neither supported by the pleadings nor tried by consent." *Crowson v. Bowen*, 320 S.W.3d 486, 488 (Tex. App.—Fort Worth 2010, no pet.).

In Question 11, the jury was asked, "Has Allen Academy proved that it substantially relied to its detriment on Bullin's promise, if any, to complete the construction of the gymnasium and was this reliance foreseeable by Bullin?" The jury answered "Yes." In Question 12, the jury was asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Allen Academy for its damages, if any, that resulted

from its reliance on Jerry Bullin's promise?" The jury answered $300,000, plus interest, representing the amount Allen borrowed for the completion of the gymnasium. The Bullin parties objected to the submission of both questions.

The Bullin parties assert that Allen never pleaded that Bullin made any promise regarding the gymnasium. According to Bullin, the only acts of reliance pleaded by Allen were attached to the loan agreements, not the gym project. The Bullin parties further assert that Allen failed to plead special damages and therefore cannot recover reliance damages. Allen argues that the broad allegations in its pleadings are sufficient to support its recovery and that Bullin should have pursued special exceptions if clarification was desired.

A trial court is required to submit questions "raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. Because the Bullin parties did not specially except to Allen's pleadings, we must construe those pleadings liberally in Allen's favor. *Brumley*, 616 S.W.3d at 831. The factual background section of Allen's live pleadings discusses Bullin's representations regarding both the loan agreements and "various capital projects" and recites that Allen "entered into and approved contracts and undertook financial obligations in reliance upon Bullin's representations." In the "promissory estoppel" section of its pleadings, Allen alleged that Bullin "made promises to [Allen] upon which it justifiably relied to its detriment" and that Allen "seeks damages suffered when it incurred legal liabilities or obligations in reliance upon" those promises. Construing Allen's pleadings liberally in its favor, we conclude that Allen's pleadings provided sufficient notice to the Bullin parties of Allen's promissory estoppel claim related to the gymnasium. Thus, the pleadings support the trial court's decision to submit Question 11.

7

The Bullin parties next argue that Allen cannot recover the $300,000 in reliance damages awarded for its promissory estoppel claim because Allen failed to plead special damages as required by Texas Rule of Civil Procedure 56. We disagree.

Under Rule 56, special damages must be "specifically stated" in the pleadings. TEX. R. CIV. P. 56. But general or direct damages need not be specifically pleaded because they "are so usual an accompaniment of the kind of breach alleged that the mere allegation of the breach gives sufficient notice" of such damages. *Archer v. DDK Holdings LLC*, 463 S.W.3d 597, 609 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (quoting *Hess Die Mold, Inc. v. Am. Plasti-Plate Corp.*, 653 S.W.2d 927, 929 (Tex. App.—Tyler 1983, no writ)).

In a claim for promissory estoppel, only reliance damages are allowed. *See Fretz Constr. Co. v. Southern Nat'l Bank*, 626 S.W.2d 478, 483 (Tex. 1981). The purpose of the reliance measure of damages is to restore the injured party to the economic position it was in before it entered into the contract. *AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 808-09 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Reliance damages are measured as the out-of-pocket expenditures made by one party in reliance on the actions of another party . . . .").

Here, Allen's petition included claims for promissory estoppel and sought "actual damages." At trial, Allen presented evidence that the school undertook construction of the gymnasium in reliance on Bullin's representation that he would pay for the project. Allen later had to borrow $300,000 to complete the gymnasium when the Bullin parties' funding of the project ceased. The $300,000 in damages sought by Allen for

8

reimbursement are reliance damages measured by Allen's actual out-of-pocket expenses. Such out-of-pocket damages are general or direct damages that are not required to be specially pleaded. *See AKIB Constr.*, 582 S.W.3d at 810. Because the character of damages was for direct or general damages, not consequential or special damages, Allen was not required to specifically identify the damages under Rule 56.

Accordingly, we conclude that the trial court did not abuse its discretion in submitting Questions 11 and 12 to the jury. This portion of the Bullin parties' first issue is overruled.

The Bullin parties further assert that the judgment on the promissory estoppel claim does not conform to the pleadings. Texas Rule of Civil Procedure 301 requires the trial court's judgment to conform to the pleadings. TEX. R. CIV. P. 301; *see also Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812-13 (Tex. 1983) ("a party may not be granted relief in the absence of pleadings to support that relief").

Texas follows a fair notice standard for pleading. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *see* TEX. R. CIV. P. 45. Under fair notice pleading, a plaintiff is not required to "set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) (quoting *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494-95 (Tex. 1988)). Here, Allen's pleadings included a section expressly identifying a promissory estoppel claim. As set forth above, we have concluded that Allen's pleadings provided sufficient notice to the Bullin parties of Allen's promissory estoppel claim related to the gymnasium. *See Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("It is not a valid objection to generally

complain that the pleading does not set out enough factual details if fair notice of the claim is given."). Thus, we overrule the Bullin parties' issue alleging that judgment does not conform to the pleadings regarding Allen's promissory estoppel claim.

Finally, the Bullin parties claim that the evidence is legally insufficient to support the jury's findings regarding promissory estoppel.

An appellant attacking the legal sufficiency of an adverse finding on which it did not have the burden of proof at trial must demonstrate that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). In reviewing a finding for legal sufficiency, we consider all of the evidence in the light most favorable to the finding, and we indulge every reasonable inference in favor of the finding. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 841-42 (Tex. 2018). The record contains more than a scintilla of evidence when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

The elements of an affirmative claim for promissory estoppel are: (1) a promise, (2) foreseeability by the promisor of reliance on the promise, and (3) substantial reliance by the promisee to its detriment. *See Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). As stated in the Bullin parties' brief, "Bullin promised that he would cover the costs of the athletic facility improvements if [Allen] could not raise the funds from other sources." Bullin himself testified that he told the board that he would cover these costs if fundraising did not cover them. On appeal, the Bullin parties assert that there is no evidence that Bullin "promised to pay, in perpetuity, for any and all future improvements to the gymnasium." The question asked

10

of the jury, however, concerned Bullin's promise "to complete the construction of the gymnasium," nothing more.

As a member and later as chair of the board, Bullin was familiar with the school's financial situation. He was well aware of and took an active role in Allen's construction campaign. Allen presented evidence that Bullin was the driving force behind the athletic facility improvements. The school embarked on those projects at Bullin's encouragement and direction, all the while relying on his statement that he would fund them if no one else would. When Bullin resigned from the board, he immediately pulled his work crews off the campus construction projects. At that time, work on the gymnasium was incomplete; for example, the showers were unusable and the roof leaked. An Allen board member testified that the school had to borrow $300,000 to complete work on the gym. Bullin suggests that because this loan was obtained in 2015, a few years after he made his promise to pay and after he had left Allen's board, it was somehow not attributable to his promise to pay. We disagree. The evidence established that the $300,000 loan was tied directly to Bullin's promise, representing the amount needed to complete the construction of the gymnasium. The school made do with the partially completed gym until it obtained the $300,000 loan, which was "the minimum" amount that would bring the gymnasium to a point at which the City of Bryan would issue a certificate of occupancy. Several features that were originally planned as part of the gym's renovation remained uncompleted.

Thus, we conclude the evidence was legally sufficient to support the elements of Allen's promissory estoppel claim.

11

Breach of Fiduciary Duty

We turn next to the Bullin parties' challenges regarding Allen's alternative claim for breach of fiduciary duty. The Bullin parties argue that the trial court erred in submitting Questions 13(B) and 14(B) on breach of fiduciary duty, because those questions are not supported by the pleadings and were not tried by consent. They also contend that the evidence was legally insufficient to support the jury's findings regarding a breach of fiduciary duty.

Question 13(B) asked whether Bullin breached his fiduciary duty to Allen in connection with "[t]he undertaking of the gymnasium construction project and his representation, if any, that he would pay for the cost." The jury answered "Yes." Question 14(B) asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Allen Academy for its damages, if any, that resulted from Jerry Bullin's breach of fiduciary duty?" As to "the amount that Allen Academy borrowed for the completion of the gymnasium," the jury answered "$100,000." The Bullin parties objected to the submission of both questions. The trial court did not award Allen any recovery on these findings.

Given our conclusion that the pleadings and evidence support Allen's recovery on its promissory estoppel claim, we need not address the Bullin parties' complaints regarding the jury's findings on Allen's alternative claim for breach of fiduciary duty, which was not made part of the judgment. *See* TEX. R. APP. P. 47.1.

12

<u>Attorney's Fees Awarded to Allen</u>

In their final issue, the Bullin parties assert that the trial court abused its discretion in awarding Allen nearly $1 million in attorney's fees. The final judgment awarded Allen $886,657 in attorney's fees through trial, $50,000 for proceedings in the court of appeals, $15,000 for filing or responding to a petition for review in the Supreme Court, and $10,000 for proceedings in the Supreme Court. The trial court awarded these fees "pursuant to the Texas Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.009 and/or [Allen's] promissory estoppel claim." The Bullin parties challenge the fee awards asserting that it was an abuse of discretion to award attorney's fees because Allen did not succeed on its claim for declaratory relief and because attorney's fees are not recoverable for a promissory estoppel claim.

We first consider whether attorney's fees were proper under the Declaratory Judgments Act. We review an award of attorney's fees under the Act for abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *see also Sammons v. Elder*, 940 S.W.2d 276, 284 (Tex. App.—Waco 1997, writ denied) ("Whether to award attorney's fees, and to which party, is a decision that is solely within the trial court's discretion and will not be reversed absent a clear abuse of that discretion."). A court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

"[I]n the exercise of its discretion in a declaratory judgment action, the trial court may award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of

13

which party sought declaratory relief." *Champion v. Ramsey*, No. 10-15-00361-CV, 2016 Tex. App. LEXIS 3923, at *2 (Tex. App.—Waco Apr. 14, 2016, pet. denied) (mem. op.) (citing *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The Texas Supreme Court has determined that section 37.009 of the Declaratory Judgments Act imposes four limitations on the court's discretion to award attorney's fees: fees awarded must be reasonable, necessary, equitable, and just. *Bocquet*, 972 S.W.2d at 21. The reasonableness and necessity of an award are questions of fact, while the equity and justice requirements are matters for the trial court's discretion. *Id.*

The Bullin parties have not challenged the reasonableness and necessity fact issues; therefore, for our purposes, the amount of fees awarded is reasonable and necessary. The Bullin parties argue that, because Allen did not prevail on its declaratory judgment claim, the fee award is not "equitable and just" or "fair." The Bullin parties note that the question of whether it is equitable and just to award attorney's fees is determined "in light of all the circumstances of the case." *Approach Res. I, L.P. v. Clayton*, 360 S.W.3d 632, 639 (Tex. App.—El Paso 2012, no pet.). They go on to assert that "[t]he relevant circumstances include the practical outcome of the litigation . . . ." That is, the Bullin parties' claim that the fee award was inequitable and unjust is largely premised upon their contention that they prevailed on Allen's declaratory judgment action and on the counterclaim for breach of the loan agreements. They further assert that the award of fees to Allen was not equitable or just because Allen's only "success" was on its

14

promissory estoppel claim and because Allen's fee award will deprive the Bullin parties of the benefit of their fee award.

We reiterate that a party need not substantially prevail on its declaratory judgment action to be entitled to an attorney's fee award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Bank of N.Y. Mellon v. Soniavou Books, LLC*, 403 S.W.3d 900, 907 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Moreover, as the remainder of this opinion explains, we reject the contention that the Bullin parties succeeded in proving their breach of contract claim. Finally, we conclude that the trial court could have determined that an award of attorney's fees to Allen was equitable and just under the circumstances of this case, in which Bullin, a fiduciary with the obligation to act in the best interest of the school, exercised significant control over school decisions and directed the execution of the agreements which raised legitimate questions of enforceability, such that Allen's pursuit of declaratory relief was warranted. The Bullin parties have not directed us to any circumstances proving that the trial court abused its discretion by determining that it was equitable and just to award Allen its reasonable and necessary fees. We are unable to agree that the trial court abused its discretion by assessing attorney's fees against the Bullin parties.

Because we find the trial court did not abuse its discretion in awarding attorney's fees to Allen pursuant to the Texas Declaratory Judgments Act, we need not reach the question of whether attorney's fees are available in promissory estoppel cases. We overrule Bullin's final issue.

15

**Allen Academy's Appeal**

We turn now to the five issues raised by Allen. Allen argues that the Bullin parties failed to prove their breach of contract case because Allen's promises to pay in the loan agreements were not supported by consideration, the evidence fails to prove authority of the individuals who signed the agreements as purported agents, Bullin did not comply with the rules applicable to contracts between a nonprofit corporation and an interested director, and the trial court should have submitted defensive questions requested by Allen. We will first address whether the Bullin parties proved their breach of contract claim.

Breach of Contract

A plaintiff asserting a breach of contract claim must establish the existence of a valid contract, performance or tendered performance by the plaintiff, the defendant breached the contract, and damages resulting from the breach. *See, e.g., Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Thus, one of the elements a plaintiff must prove is that there was a valid contract between the plaintiff and defendant. *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 162 (Tex. App.—Dallas 2013, no pet.).

Here, Allen asserts that there was no valid contract between it and CJB Partners. Allen contends that BRE Group, to which CJB Partners transferred the loan agreements, failed (1) to plead and prove that the signatories to the loan agreements were Allen's authorized agents and (2) to request a jury question or obtain a finding that they were Allen's agents. In support of its argument, Allen urges that the evidence does not

16

establish that Clanton, Prescott, and Rouse had the actual or apparent authority to bind the school to a loan.

The Bullin parties respond that Allen waived the agency issue by failing to raise the issue in its pleadings. We disagree. A party alleging the existence of an agency relationship bears the burden of proving it. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007); *see also Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944) (in plaintiff's cause of action based on written contract alleged to have been executed by duly authorized agent, burden was on plaintiff to prove agent was authorized to execute contract); *Amerigroup Tex., Inc. v. True View Surgery Ctr., L.P.*, 490 S.W.3d 562, 565 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Although opinions are discordant on the issue of who bears the burden to plead authority or the lack thereof, the Texas Supreme Court has consistently held that the burden of proving apparent authority rests with the party who alleges it."); *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 593 (Tex. App.—Dallas 1988, writ denied) (agency relationship need not be denied in verified pleadings).

The law does not presume agency. *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A contract executed by an unauthorized agent, who purports to make the agreement on behalf of another, is not enforceable. *Angroson, Inc. v. Indep. Commc'ns, Inc.*, 711 S.W.2d 268, 271 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). An agent cannot bind a principal unless the agent has actual or apparent authority to do so. *Verizon Corp. Servs. Corp. v. Kan-Pak Sys., Inc.*, 290 S.W.3d 899, 904 (Tex. App.—Amarillo 2009, no pet.); *Huynh v. Nguyen*, 180 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

17

Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *See Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 210 (Tex. App.—Fort Worth 1984, no writ). Actual authority is the authority which a principal intentionally confers upon an agent, or intentionally allows an agent to believe he has, or by want of ordinary care allows the agent to believe he has. *Suarez*, 35 S.W.3d at 273. Apparent authority is based on estoppel and arises "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (quoting *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998)). "[A]pparent authority is not available where the other contracting party has notice of the limitations of the agent's power." *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 779 (Tex. 1974).

In this case, the jury was asked in Question 2 whether Allen and Bullin "agree[d] that Bullin would loan Allen Academy funds as outlined in the Loan Agreements with the expectation that it would constitute a legally enforceable agreement?" The jury answered "yes" as to all four loan agreements. However, there was no issue submitted regarding whether Clanton, Prescott, and Rouse had the authority to enter the agreements on behalf of Allen. The actual or apparent authority of Clanton, Prescott, and Rouse to act as agents of Allen is one of the elements of a finding that Allen and Bullin had a valid and enforceable contract.

Under Texas Rule of Civil Procedure 279, when one or more elements referable to a ground of recovery are submitted to and found by the jury, and one or more of the elements are omitted from the charge without request or objection, then the omitted elements shall be deemed found by the court in support of its judgment if there is factually sufficient evidence to support such a finding. TEX. R. CIV. P. 279; *Am. Natl. Petrol. Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990); *Vahlsing Christina Corp. v. Ryman Well Serv., Inc.*, 512 S.W.2d 803, 810 (Tex. App.—Corpus Christi 1974, writ ref'd n.r.e.) (applying Rule 279 to omitted agency issue).

Because Allen is attacking the legal sufficiency of an adverse finding on an issue on which the Bullin parties bore the burden of proof, Allen must demonstrate that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex. App.—Dallas 2005, pet. denied). A reviewing court will sustain a no-evidence point when: (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

The evidence showed that under Allen's bylaws, only the full board had the "power or authority to bind the School" to a loan agreement. The two board members who signed the agreements, Clanton and Prescott, both testified that they did not have authority from the board to enter the loan agreements. Other board members similarly testified that the

19

board had not authorized Clanton, Prescott, and Rouse to commit the school to the loan deals. Rouse, the third person who purported to sign on behalf of Allen, was not a member of Allen's board. All of this evidence reflects that Clanton, Prescott, and Rouse did not have actual authority to enter the loan agreements on behalf of the school. Clanton, Prescott, and Rouse did not have apparent authority to bind the school, either. The other contracting party, CJB Partners, acting through its principal Jerry Bullin, had notice of the limitations on the signatories' power. As chair of the board, Bullin was aware of the bylaws, which restricted board members' power to contract on behalf of the school. Thus, we conclude that the record lacks sufficient evidence to support a deemed finding by the trial court that Clanton, Prescott, and Rouse were agents authorized to enter loan agreements on behalf of Allen.

The Bullin parties argue that Allen's judicial admissions bar its lack of authority argument. We are not persuaded by this argument. A judicial admission is a clear, deliberate, and unequivocal assertion of fact which conclusively disproves a right of recovery or a defense and makes the introduction of other evidence on an issue unnecessary. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 905; *In re Estate of Guerrero*, 465 S.W.3d 693, 705 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). The references to Allen's pleadings pointed out by the Bullin parties, which generally assert that Allen entered into and approved contracts and undertook obligations, fall short of being clear, deliberate, and unequivocal admissions that Allen's board expressly authorized the approval of these four loan agreements.

The Bullin parties next argue that Allen is estopped from claiming lack of authority because Allen ratified the transactions by accepting their benefits. The Bullin parties

20

assert that Allen "accepted millions of dollars under the Loan Agreements" and may not now claim that the signatories to the agreements lacked authority. However, this argument is not borne out by the evidence, which shows that these funds were transferred to and accepted by Allen before the loan agreements were executed. Moreover, the jury made no express finding that the actions of Allen's purported agents were ratified.

Because the record does not show that the agreements were signed by individuals with actual or apparent authority to bind Allen, the Bullin parties did not establish the existence of a valid contract. Therefore, the Bullin parties' breach of contract claim fails.

Because we have concluded that the Bullin parties' contract recovery claim fails, we need not reach the other issues presented in Allen's brief. *See* TEX. R. APP. P. 47.1. We reverse the judgment for the Bullin parties on the breach of contract claim against Allen. Further, we remand to the trial court for consideration of the Bullin parties' alternative claims,[2] reconsideration of the attorney's fees awarded to the Bullin parties,[3] and entry of a proper judgment. *See Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

---

[2] We note that the final judgment incorporated the jury findings in favor of the Bullin parties on the alternative claim for unjust enrichment and on actual damages associated with that claim.

[3] The trial court awarded attorney's fees to the Bullin parties "pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 [providing that the prevailing claimant is entitled to attorney's fees for a breach of contract] and/or the Texas Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.009."

21

**Conclusion**

We affirm the judgment of the trial court on Allen's promissory estoppel claim against the Bullin parties and the award of attorney's fees to Allen. We reverse the judgment of the trial court on the Bullin parties' breach of contract claim and remand to the trial court for further proceedings consistent with this opinion.


Judy C. Parker
Justice